After you're through with this, maybe you can rush in and see a little bit of the Ray Nagin Appeal, which I'm sure is going to be a little more colorful than what we have today, but we'll do our best. We just have a couple traffic rules. As you know, you have 15 minutes for your argument. Yellow light will come on. You'll have two minutes left. When the red light comes on, you may conclude unless you're answering a judge's question. And also, while we've read the briefs and record excerpts, we've not always gone into the entire record before arguments, so we appreciate those citations. First case is going to be a matter close to the sum of our hearts. Krueger v. Torres, number 1411355, Mr. Ackerley. Good morning, Your Honors. Bruce Ackerley on behalf of the appellant Jeffrey Krueger. There are a number of issues presented by this appeal. With the Court's indulgence, I would like to focus initially on the issue involving the for cause requirement under Section 707A of the Bankruptcy Code and whether it is appropriate specifically to include a bad faith requirement among those for cause examples listed in 707A or whether the Court should limit through statutory construction the types of cause that are appropriate to be considered under 707A. And if time permits, I would like to get into some other issues, particularly the motion versus adversary proceeding issue. This case is unique to all of the other cases that are cited in both the appellant's and appellee's briefs in that this case involves a panoply of issues or, I guess, causes that were addressed by the bankruptcy court. The bankruptcy court did apply a bad faith standard. It also involves a situation in which a motion was brought almost over two years after the case had already begun, after the time in which the appellee had already waived his rights to bring certain causes of action under the Bankruptcy Code, which should have been addressed through an adversary proceeding. What's your best authority for saying that parties are limited to one or the other way of disposing of a bankruptcy case? In other words, denial of discharge or dismissal for cause? We've cited some authority in the brief, but the best resource is the Bankruptcy Code itself. The Bankruptcy Code provides, particularly in Chapter 7 context, that there are certain proceedings which are to proceed by motion or objection. There are certain proceedings which are to proceed by adversary. There are special rules dealing with both. I would say that your due process, considering what your client did in the state court to wit, transfer cash out of an account at the very moment that the state court was about to hold him in contempt for transferring cash, it's ironic at best for him to make an argument about due process. But more than that, he had due process here. He had a hearing. He had discovery. He had notice of the issues. It's not clear to me what more could have been done. I understand, Your Honor. What more could have been done was to provide him with the adversarial process, and that is a pretrial process which involves adversary proceedings where you have scheduling orders and full discovery. But the due process issue is an important issue, but a lesson. The facts that Judge Jones just recited, would you challenge? If you accept those facts, what else is there to say? I don't accept the facts. In fact, one of the problems with what the bankruptcy court did, Your Honor, was had before it a motion to dismiss under 707A and considered things happening in state court, considering things outside of its jurisdiction. Those kinds of things shouldn't have been considered for cause. When we look at Section 707 and we look at the cases that have decided those, the motions were brought within three months, within a short period of time, and the commentators and colliers, which is an authoritative treaty on this matter, clearly indicate that the examples that are set there indicate that they're dealing with the procedural process. They're dealing with why was the case filed. All of the cases that are before the court, the cases in the circuit court and the cases in the bankruptcy court. When you seek bankruptcy protection from an ongoing state, when you seek bankruptcy protection from ongoing federal proceedings, inevitably you're looking at the state proceedings, which is what's happened here. I don't understand when you say you . . . State court proceedings here happened well before the bankruptcy court, before the bankruptcy case was filed. By my definition, yes. Well, because our argument is that 707A focuses on why was the case filed. In this instance, the case was filed because Mr. Kruger had a motion for summary judgment pending against him and deemed admissions, which were being thrust upon him at a time when he didn't have counsel, and so he filed bankruptcy. A legitimate purpose. The issues that were raised by Mr. Torres two years into the case were issues that he could have very well raised right at the start. Lack of a proper address, right? Different things like that are the kinds of things that could have been addressed, but he waited to . . . When he didn't have . . . having filed Chapter 7, it was the trustee and Mr. Kruger himself who had the right to deal with the stock. Goodness. You know, really, I mean, you are . . . This is one of the most egregious cases of misuse of the bankruptcy court that I've ever seen. I respectfully disagree, Your Honor. I think that what we have here is we have a bankruptcy court who, in the context of what was happening in front of him, he just took an opportunity, essentially, to find a number of things and globbed them together, which should have been raised at the appropriate time. Mr. Torres did not . . . How is he disadvantaged by that, by any delay? Well, my client is disadvantaged because he didn't get the discharge that he's entitled to in bankruptcy. If he . . . Well, I know. Bankruptcy is a process. Are you saying . . . I mean, one of your arguments is that this was raised untimely, and I'm saying how is it untimely? How did the untimeliness disadvantage your client? Because he didn't have the right to address issues such as alter ego, de facto . . . The bankruptcy court found that he was the de facto owner of an entity. It wasn't even raised in the motion. It was raised by the bankruptcy court in its ruling. How is he . . . How does he have an opportunity to address that issue when he doesn't even know that the bankruptcy court is going to decide that issue? It wasn't raised in the motion. In fact, if you look at the things that were raised in the motion and the things that were determined by the bankruptcy court, most of the things that were determined by the bankruptcy court weren't even in the motion. And we didn't have an opportunity to address those, Your Honor. If we had an adversary proceeding, they would have been in the complaint, and they would have been in a pretrial order, and we would have had an orderly process. What was in the motion for bad faith dismissal? What was in the motion, Your Honors, was a fictitious address, breach of requirement of 9011, which is essentially Rule 11, failure to give notice to creditors, failure to schedule an entity, false oath, very general, just false oath, fail to disclose management positions in two entities, fail to disclose non-ordinary course transfers of money. All of those except for the fictitious address. And the court has all of those against your client, and standing alone, I suspect that the conjurees of all of those would have been enough to dismiss the case. What the court, what the . . . So if the court went on and made other adverse findings, those are lanyard from the standpoint of the appellee. Well, respectfully, Your Honor, the bankruptcy court abused its discretion by going into areas that we had no notice of. We didn't know the bankruptcy court was going to find civil theft. We didn't know the bankruptcy court was going to find a violation of the automatic stay. We didn't know that the bankruptcy court was going to find alter ego of crew. How would we know those things if they weren't alleged, as required by the bankruptcy code, in an adversary proceeding? And that's the crux of the problem here with the motion versus adversaries. The bankruptcy code sets up specific rules, and more specifically, when we have an adversary process that involves objections to discharge and those kinds, the bankruptcy code provides that you have to bring those within a certain period of time, and the bankruptcy court has no jurisdiction, has no ability to extend those deadlines. And so here, after having been denied already an opportunity to extend those deadlines, Mr. Torres asked the bankruptcy court to extend the deadline again, knowing it was well after the time that the bankruptcy court could do so. The bankruptcy court held that motion in abeyance while he determined the motion to dismiss. Having determined the motion to dismiss, he says, well, I don't need to reach the motion to extend. What he did was he granted him, essentially granted him an opportunity, an extension, a de facto extension of the deadlines, which he couldn't do by applying way outside the guidelines of the cause. And I ask you this to begin with, I believe, for saying that a bad faith dismissal motion has to occur at a particular point in time. Well, my statutory construction argument, Your Honor, is that you can file... I'm not saying that you can't file a 707A motion at any time during the course of the case. But what I'm saying is when we look at the context of all of the cases under 707A, all of those cases are filed early on. And the Eighth Circuit and the Ninth Circuit has clearly indicated that the purpose of 707A is to address problems that arise in the filing of the bankruptcy, not problems that arise in the context of, oh, was there a fraudulent conveyance, was somebody acting as a de facto owner? This bankruptcy court went well beyond, we believe, the reasonable construction of for cause. If you look at 707A, there are three examples. Well, I mean, again, there's the argument to be made. Russell Nelms has been a bankruptcy lawyer for a long, long time, and there's an argument to be made that he was just trying to tie down his ruling in every possible way by articulating all the things that have been done in an unusual manner in this case. I respect Judge Nelms, and I think he is an excellent jurist. However, going out of your way to tie down a ruling doesn't mean you can make law from the bench. Essentially, that's why we have de novo review. Granted, he can assess the credibility of the witnesses. He can do things like that. I'm focusing, Your Honours, on what were the causes that he determined 707A to be applicable. If you look at what he found to be cause and you look at Section 707A, the three examples that are listed in 707A, I agree, when we say including, that means it's not exhaustive. But as Collier's on bankruptcy indicates, it doesn't mean any cause, obviously. We have to focus on what are the appropriate causes that were intended by Congress to fall within the parameters of 707A. Bankruptcy to protect the honest but unfortunate debtor, it has been said many, many times, and this fellow was neither honest nor unfortunate, it looks like. Your Honour, I understand, and that is one of the constructs of bankruptcy. That statement comes in discharge trials. But the judge found that Kruger lied on the witness stand. Well, he found, but as we pointed out in our brief, that he did not commit perjury. Perjury is a very specific... He found that he didn't believe... On impeachment, he says something different, I understand, but he didn't lie. There's no evidence that he perjured himself. And we discussed the definition of perjury. He was evasive, he was vacillating, lack of believability. That's just the start of what the district court says about him. Well, the district court, I don't believe, fully analysed... I focus on what Judge Nils had in front of him and basically had a witness he didn't... I understand, he didn't believe. But my focus is on, that's fine, but let's allow the process of the Bankruptcy Code to work itself. Let's allow cause to be what cause is justified. If you look at 707A and you look at the amendments that Congress enacted in 2005 and added in 707B, they added a substantial abuse provision in 707B. Congress didn't amend 707A. There's 30 times, 30 times in the Bankruptcy Code, good faith or faith shows up. It doesn't show up in 707A, and there's a reason for that. It's because in the context of Chapter 7, we have a totally different relationship than we do in Chapters 11 and Chapter 13. How would you articulate the limits of the reach, if you will, of 707A? Pardon me, Your Honour. How would you articulate the limits of 707A? I would articulate them... And by way of example, we dropped a footnote into my reply brief. It's footnote 7. The bankruptcy court in the Piazza case did a fairly good job on its own. It crafted 15 non-dispositive factors for consideration whether a case had been filed in bad faith. If you look at those factors and you judge them against the three that are listed in 707A, you will see they're all dealing with procedure and filing issues with respect to filing. You look at all of the cases that are cited by both sides. They're all dealing with motions to dismiss that are filed within months of the bankruptcy, asking the question, how many creditors do we have here? Are there any assets? Was this case filed in bad faith? Does this fit within the parameters? If you look at these, it says, debtor has made no efforts to repay its debts. The unfair use of the bankruptcy process. Debtor has sufficient resources. And you'll recall in this case, the bankruptcy court completely contradicted itself when it dismissed the case for two years and then stayed that ruling and allowed a distribution of assets. It allowed the case to be administered. Well, that's something that I'm going to ask Mr. Torres's lawyer about. That's unusual for sure. And I think it shows that the bankruptcy court... The bankruptcy court wanted a result. Wanted to get a result and crafted a way to find as many things as possible. I don't blame Judge Nelms in any regard for that. The problem is those causes, those things that he found, except for, perhaps, the bad address and, well, the bad address and the notice to creditors, everything else doesn't fall within 707A. You maintain that a bankruptcy court cannot dismiss a case because its process is being abused. I would think that a United States District Court judge has that power. I see my time's up, but, Your Honor, I think the bankruptcy court can dismiss a case for substantial abuse, but if you're talking about 707B, that doesn't have the context here. It doesn't have a label on it. Can the... Do you deny that a bankruptcy court cannot dismiss the case, get out of here because you're abusing the process? Oh, I think bankruptcy court can dismiss a case if there's an abuse of the process, okay? But here, if you look at... All right, go ahead. Thank you, Your Honor. All right, we have time for rebuttal. Okay, Mr. Keefer. May it please the Court, I'm Paul Keefer, Wright-Ginsburg-Brusselow Counsel for Michael Torres, appellee in this matter. The appeal fails for three principal reasons. The first is there's no prohibition, no exclusion, no elimination of bad faith with regard to what may be cause for dismissal of a Chapter 7 case. But the statute doesn't mention bad faith, does it? No, but the word including... Sorry, Your Honor. It's not in the list, is it? No, the list, as this Court has held in Cyprus, is not exhaustive, it is illustrative. And this Court's own summary calendar decision in regard to 707A, in regard to a corporate facility, I've cited it in my Rule 28J letter I sent to the Court about three or four weeks ago. Another panel of this Court held under 707A that though it didn't have to get to the issue of bad faith, it did state specifically that that list is only illustrative and is not exhaustive. Mr. Ackerley fairly points to the fact that good faith is listed elsewhere numerous times but not here. What meaning should we give to that? I think the problem there is that oftentimes good faith is used in circumstances where you're seeking to have the approval of third parties, such as in planned confirmation contexts or otherwise, when you need to be able to say to other parties, I would like your vote. You need to be doing that in good faith. You need to be doing that in an appropriate fashion, and it's something that Congress made a specific decision to add to that. This Court wrote an opinion back in 1987 called N. Ray Little Creek, where we said bad faith had been an understanding in every bankruptcy law since 1898, so that might be the law of the circuit. I do agree that that is the case. To answer Judge Smith's direct question, I was trying to address that I do agree that bad faith is embedded in there. It's really underneath 105A's requirement to keep the courts, for the court to be able to take care of abusive process because that is functionally, abusive process is functionally a bad faith activity. It is not something that's done in good faith. One doesn't abuse the court's process in good faith. It is by its definition bad faith. Do you want to go over the findings that are, he's objecting to the fact that a lot of findings are not procedural, but as I read Judge Nelms' opinion, it seemed to me a lot of findings were procedural, like perjury and false address and not revealing assets and transferring assets during the course of the bankruptcy. Those all seem pretty procedural to me. Well, there's a lot of, there's a significant failure on account of the debtor to detail his holdings and his rights and his capacities, and the functional element of the two crews, the CRU crew that was property of the estate, though his directorship was not noted, nor his presidency, with the K crew, which standed for Kruger Renewable Utilities or a similar circumstance where basically hundreds of thousands of dollars were garnered by a company of a similar circumstance post, either at the time of the petition, right before the petition, and what the court was found was some $600,000 or $700,000 were accumulated by this undisclosed entity, an entity that Mr. Kruger had the veto right over who could be the, whether the shareholder composition could be changed, and he was the president, executive, president, chairman of the board, and director of. Those were not disclosed under Statement of Affairs No. 18, a very important point, because the trustee who is the one responsible for taking care of these items and for determining what should or shouldn't be done with Kruger's stock would be the party that needs to know that, as well as other creditors. Who was the trustee here? Carrie Ebert, Your Honor, was the trustee in this case. At the time that this case was going on, it was a very, very busy time frame. It was during the Great Recession that this case came to its initial points, and I think in 2011. Let me ask you a question. It seems to me that ordinarily, if you were going to have this kind of motion to dismiss, I agree, I believe there's no time limit on that, but this is, why was it filed a year and a half into the proceeding? Partially because some of this information did not come up until the discovery around the time. There was later, and my understanding of the record is that many of these facts were discovered after, well into the case. Surely your client knew about them. My client did not know about the Krug with a K. No, he was not listed as a shareholder, neither was Mr. Kruger. He was listed as holding the right over the stock. The alternate version of this CRU that the debtor owned the estate on the interest in, all of its trade secrets, et cetera, were moved over. This isn't the first time the trade secrets and corporate benefits were passed from one entity to another, and now yet to a third. He had made his attempts, as Judge Nelm makes note of, there's all sorts of nice, just interesting changes of addresses that make it very difficult, one, to serve an injunction, and two, to be able to locate this debtor for the purposes of this case. There's an element of . . . Your client was an investor in the KRU with a K, right? C. KRU with a C, okay. And he didn't know that suddenly that had become a shell company and this KRU with a K had opened up and taken all the business? He did not until later in the case, because if you recall, in the factual circumstance, it wasn't until the state court post-petition had the stay lifted for the ability to hold him in contempt. It held him in contempt twice. It was the second contempt for 125 days in jail that ultimately the Texas Courts of Appeals overturned for lack of specificity, i.e., what's the account he's not supposed to spend from, etc. It was really more a function of the draftsmanship of the order that the district court and the state didn't achieve to meet the standards. And it was within two weeks of that date that Mr. Kruger goes off, Kruger with a K, goes off, notices the board meeting for KRU, and starts to change everything, even though the prior ruling from the estate court had said you don't have the ability to call these meetings. That's while the bankruptcy's pending. And the whole point is that at that point, whatever shares he owned in KRU were not his to manage. They were those for the trustee to manage for the benefit of the debtors, right? Absolutely. 362, as this court is well aware, is for the purpose of staying activity against property of the estate, and that applies particularly in a 7 to the debtor as well. Okay. Well, then the other question I have that's quite novel in this case is the fact that the judge says it has to be dismissed for bad faith, but I'm going to let the trustee continue to administer it. Now, what the heck . . . I think the answer to that is pretty straightforward. Mr. Kruger, through the months and years before, had functionally eliminated challenges to himself through the dismissal of the lawsuit by KRU against him and by dismissal of the discharge action by KRU against him that this court upheld. And so in that context, there was also, we need to take some control here. Now, were you a party to that other case that this court upheld? Myself? No, Your Honor, I was not. But that was prior counsel, Jackson Walker, had that element for Torres. Yes, Your Honor, I took over afterwards. But in that context, it was the circumstance of taking action. I think the court's point was that there's been too much abuse here that we can't just turn this back over to the debtor because 349 vests it back in the debtor, absent the court otherwise holding. And 349 has no restriction on cause. The 349 that sets forth in A and B, that A sets forth what are the causes or I should say the circumstances that dismissal should have. What is the effect of dismissal? And B sets forth the default circumstance that if dismissal is granted, here are the things that happen. We restore transfers, we do these things that may have been avoided or things that had happened under 522, they're all reinstated unless the court orders otherwise. I believe in this instance the court was looking at the fact of there's been too much chicanery going here for me and just to let this go right back to this individual, it would almost be like rewarding him for the actions he's taken in violation of the stay. Because the circumstances had already been to a point where his actions up through Crewe had been approved by the Duis District Court because a reference had been withdrawn regarding certain elements of that case. That discharge matter, which was functionally the corporate entity seeking to hold its director and officer liable, was dismissed by virtue of Mr. Kruger violating the stay, voting the shares, putting himself in as officer and director, suing the entity's counsels for malpractice or threatening to do so, and then causing the cases against him to be dismissed. Additionally, one other element that's out there is Mr. Kruger takes counterclaims that he asserts have value in the millions of dollars, not as a defensive position, as a defense against a claim against him, but rather as a counterclaim for recovery, seeks those funds for his own benefit. To do those things, I believe the bankruptcy court determined, we need to reasonably deal with the fact that there are some assets here that need to be administered to pay and that there shouldn't be an award here to Mr. Kruger for his misbehavior. I want to talk about the first point that Mr. Akerle talks about. Bad faith in the totality of the circumstances which a bankruptcy judge must assess in making a decision to dismiss or not is a proper element of that determination. Bad faith in this context is a shortened description, a shortened conclusion based upon many multiple breaches of the automatic stay, multiple failures to report assets, rights and capacities, and continued evasiveness and chicanery. The appellant's arguments at its heart is that 707A, by not specifically noting bad faith, requires that bad faith be eliminated from the reach of the word including. But including is a statutorily defined rule of construction circumstance. We have the attempt to pull in canons of construction that may be necessary when it's not detailed or defined as it is here in the Code, because in the Code it says includes and including are not limiting. It says exactly what it implies. There's no reason to go to a canon of construction when there's a statutory reference eliminating it. By the way, the Seventh Circuit recently came out with a similar dismissal case and it said we don't need to decide whether there's bad faith because this is all bad. Well, I think that it is. You could just take out the word faith and say it's all bad. I think, Your Honor, that it's more, it's kind of the conjunction of 105 and 707, because 105, the court's requirement to take care of its jurisdiction and to deal with abuse of process, along with 707, it could well be that there's just a, you know, there are often, as we all know, the Chapter 7 is a very largely used chapter by many, many people. The bankruptcy court is the entryway for most Americans into the federal court system. And a lot of 707A dismissals are, if they're going to be out, they're going to be for their initial failures to report, but it also doesn't mean that just because that's the predominant element that you can't also, at some later point in time, do these, take these actions. One of the things I want to make a difference is, another point I want to make in the time that I have remaining, is that all the procedures defined for this determination of the Rule 1017 and 9014, those are the rules, 1017 is what specifically applies to a dismissal. It's the specific rule. And it incorporates 9014, which incorporates virtually all of the elements of the federal rules of civil procedure that the bankruptcy procedures adopt. And moreover, if there had been a request for more information, there is a provision in 9014 to be able to ask the court to add more provisions to that. I thought you had, I thought there were several months for discovery in any case. Six to seven months. If there had been a desire to incorporate Rule 26 or 28 or some other, and by that I mean 7028 or, because they have to be in the 7000 series to be incorporated through 9014, that's a simple motion. They can be asked to do those. If you felt that those were somehow necessary, you had the ability, Mr. Kruger, to do that. He didn't. And there's no authority for the contention that 727 or 523 must be tempted and tempted in order to seek, it's either that or seek dismissal. Because two things. One, 727 you must be either a creditor, a trustee, or a U.S. trustee. The court cannot use 727. 523, you must be a creditor. The court is not owed money. So 707 is the only means for the court, because the court has standing under 105A, to do things on sua sponte in any instance where a party may object. Because 523 and 727 limit their definitional capacities to creditors, U.S. trustee or trustee, there's not a party and interest statute, party and interest entree. As the court well knows, the Bankruptcy Code is rife with options and circumstances  I believe it's 1102 through 1104 is what gives some description of those things, particularly in Chapter 11. And in other instances, party and interest is utilized. 707 doesn't have a reference in it to trustee, creditor, or claimant. It just says may be dismissed, may seek dismissal. And that, along with 105, is how the Bankruptcy Court enables itself to get this done. Judge Nelms noted, and I think it's very telling as to why this case went the way it went. Oftentimes, the 7523 analogy, we need an adversary proceeding and this is really Torres' fault, was countered cleanly by the court itself. It said, this court does not grant the motion to dismiss solely to vindicate Torres' rights, but to vindicate the rights of all honest debtors who come before this court. And so there is a system preservation element here. There was a lot of abuse here. Let me ask you a question. Has the case, in fact, been wound up? Your Honor, I'm not certain. I suspect that it has, but I cannot answer that question. I have not contacted Ms. Ebert to find out whether the case itself is actually closed. My suspicion is that that went during that time frame before the entry of the order of dismissal, I mean, the opinion and the order, that that's when the administration took place. There was no stay of that pending appeal? No, Your Honor. The circumstances was, in this case, both was that initially when the opinion was issued, a notice of appeal was filed, as was a motion for rehearing. The motion for rehearing was not sought to be stayed and it kind of merged in. We got it by agreement. We merged them into one appeal because we saw the problems this could present, and we basically had one appeal from the final dismissal order that was some four to six months later. So I believe that the administration of the estate occurred in that time frame. What does your client get out of pursuing this dismissal motion? You know, I think the answer, in regard to what my client gets out of pursuing this, is a sense that there's fair treatment of the bankruptcy court's not being used to hoodwink him. I mean, did he get back his shares in Crewe? Did Crewe become Crewe with a K? I do believe there was subsequent state court activity in the litigation below that had been otherwise stayed. I don't know specifically, Your Honor, what did occur. If I'm not mistaken, they went forward on matters in the state district court, and because once the case was actually dismissed, there were state court actions going forward. I don't even know if it's up on appeal. The determinations that may have been had were up on appeal. Your Honor, I hate to say I do not have an idea of what happened there. You don't want to decide a dispute that's moot or where your client doesn't have standing. No, and I don't think that's being asked here because all the dismissal does here is says you can't come back to this court. Normally dismissal under 349B, I believe, is for 180 days that you're not supposed to come back if there's any bad faith. What Judge Nelms did says I'm going to make it two years instead of 180 days. And dismissal doesn't really address specifically the rights as between the parties. Mr. Kruger can file and ask for a discharge in roughly about four or five months from now, if I'm not mistaken. He could file all over again, seek to get his dismissal, seek to get the claims against him discharged, and face the prospect of 727s and 523s potentially being filed. But he's not lost that opportunity. In conclusion, Your Honor, there's one other slight point that I would like to take note of. There has never been in this case anything other than an attempt to show other plausible factual conclusions, other plausible legal resolutions. But that's not the standard before this court. You don't find that, well, if you were the judge, you might have found a different conclusion to this. It has to be clear error. You give deference to the trial court, and if the trial court says that X occurred, you're going to need to be able to show as an appellant that there's no way X could have occurred, or something very similar to that. You can't say, well, maybe it wasn't X, maybe it was Y. The same facts might have shown something different. That's what he did not show, Your Honor. He did not show clear error. He did not show clear – nor did he show any abuse of process – I'm sorry, abuse of discretion by positing other plausible conclusions. If there's any other questions, Your Honor, I believe my time is just about up. Thank you, Your Honor. If I may, Your Honor, you had asked counsel about the 362A issue and the counterclaim issue, and I think the important thing to remember about these issues is whose issues were they. First of all, these issues were raised for the first time at the motion to dismiss hearing. They were found by Judge Nelms. But it's important, Ms. Ebert, the Chapter 7 trustee, had no complaints, no issues, never raised a question with respect to violation of the automatic stay, never raised a question with respect to assertion of the counterclaims. And, in fact, the stock that was allegedly voted – Mr. Kruger actually bought that stock back. Assets came into the bankruptcy estate. No objection by Mr. Torres with respect to that process. So when we focus on cause and we focus on what harm or prejudice to Mr. Torres was there, there's very little harm or prejudice to him. Just in the interest of full disclosure, I would note to you a new case from the Seventh Circuit called N. Ray Schwartz, and I – let's see – decided in August of 2015. There's a Westlaw site to it. But, anyway, it's a similar case in that it says it doesn't have to be resolved on bad faith, but Mr. Schwartz said, I'm dismissing this because these people shouldn't be bankrupt. They were going out and spending money like heck, and then they filed bankruptcy. So it's not a procedural.  And, respectfully, Your Honor, there is not a single case, not a single case that I've been able to locate under 707A, whether it involved a bad faith analysis or involved cause analysis, that involves anywhere near what we have here where a motion is filed two years later and the court is finding things such as de facto ownership, violations of the automatic stay. Perjury. Perjury. I understand. But my point is he's finding these things at a point in time, and Mr. Torres' counsel said, you know, when you asked him the question about why did the bankruptcy court allow the estate to be administered? See, we don't know. I believe, I think, that's what Mr. Torres' counsel says. We don't know. What he did was he allowed it because he realized that this is a case in which there were multiple creditors. This is a case in which there was money to be distributed. When you look at 707A, it's a statute which the court should find has specific focus. It's not a general statute of application. Even though it has three examples and it says including those three examples, the court needs to look at those examples and say, in the context, what is the cause? The cause is surrounding why was this case not filed, the Seventh Circuit case Your Honor just mentioned. I'm not familiar with the facts of the Swartz case. However, it appears that it's similar to the other cases, and that is why did this debtor file this case? They can pay their creditors. They're running from a spousal order. They're doing things that are immediate and temporal at that time, not after the district court dismissed, the U.S. district court dismissed Mr. Torres' case, and he realized, oh my gosh, I cannot now, I have no grounds to object to discharge. I have no way to challenge Mr. Krueger. Let me file. Well, he was just using creativity in the way that your client has consistently used creativity to avoid the, to obtain his result. No, I disagree. Well, I think, I think, I think, I don't know if I would call it creativity. I think it would, I'd call it taking a shot. Okay? I think he applied a provision of the Bankruptcy Code, which granted, on its face, 707 doesn't say, and there's no rule that says you must bring 707A actions within a certain period of time. However, he raised issues that he could not raise. He knew, the reason he knew he could not raise them is he asked for an extension of time. Mr. Torres knew that the Bankruptcy Court could never give him an extension of time. No, as Judge Higginbotham said, under Rule 9011 and several, a couple of statutory provisions and so on, a court can dismiss a case for bad faith conduct by one of the parties. Yes, but the question then becomes what is, first of all, what is that bad faith conduct? And in what context is that rising? And here, the court did not rule under 105A, the general, the general all encompassing do anything just in bankruptcy section. The court ruled under 707A. The court found a cause under 707A. If this court extends, if this court finds that this decision was appropriate under 707A, the floodgates will open. Thank you, Your Honor. All right, so thank you. Thank you.